**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**
────────────────────────────────────
**FORD MOTOR CO.,**

                Plaintiff,         09 Civ. 1646 (JGK)

       - against -             **MEMORANDUM OPINION AND**
                                                 **ORDER**
**THE RUSSIAN FEDERATION, ET AL.,**

                Defendants.
────────────────────────────────────
**JOHN G. KOELTL, District Judge:**

Ford Motor Company ("the plaintiff" or "Ford") brings this action against the Russian Federation and its Mission to the United Nations ("the defendants" or "the Russian Mission") seeking indemnification pursuant to a provision of a motor vehicle lease under Ford's Diplomatic Lease Program. Ford entered into a $4.65 million settlement with a passenger who was injured in an accident while riding in a vehicle leased by the Russian Mission. Ford now alleges that the Russian Mission is required to indemnify Ford for the settlement payment.

The Russian Mission moves to dismiss the action pursuant to Federal Rules of Civil Procedure 12(b)(1) for lack of subject matter jurisdiction. The Russian Mission argues that the Russian Mission is immune from suit pursuant to the Foreign Sovereign Immunities Act ("FSIA"), 28 U.S.C. §§ 1602, et seq. The Russian Mission initially argued that Ford's attempts to serve the defendants were invalid, but the Court has

subsequently found that the defendants were properly served. Ford opposes dismissal.

**I.**

In defending a motion to dismiss for lack of subject matter jurisdiction, the plaintiff bears the burden of proving the Court's jurisdiction by a preponderance of the evidence. Makarova v. United States, 201 F.3d 110, 113 (2d Cir. 2000). When the defendant claims immunity under the FSIA and the defendant "presents a prima facie case that it is a foreign sovereign, the plaintiff has the burden of going forward with evidence showing that, under exceptions to the FSIA, immunity should not be granted, although the ultimate burden of persuasion remains with the alleged foreign sovereign." Cargill Int'l S.A. v. M/T Pavel Dybenko, 991 F.2d 1012, 1016 (2d Cir. 1993) (citations omitted). In considering such a motion, the Court generally must accept the material factual allegations in the complaint as true. See J.S. ex rel. N.S. v. Attica Cent. Sch., 386 F.3d 107, 110 (2d Cir. 2004). The Court does not, however, draw all reasonable inference in the plaintiff's favor. Id.; Graubart v. Jazz Images Inc., No. 02 Civ. 4645, 2006 WL 1140724, at *2 (S.D.NY. Apr. 27, 2006). Indeed, where jurisdictional facts are disputed, the Court has the power and

the obligation to consider matters outside the pleadings, such as affidavits, documents, and testimony, to determine whether jurisdiction exists.  See APWU v. Potter, 343 F.3d 619, 627 (2d Cir. 2003); Filetech S.A. v. France Telecom S.A., 157 F.3d 922, 932 (2d Cir. 1998); Kamen v. Am. Tel. & Tel. Co., 971 F.2d 1006, 1011 (2d Cir. 1986).  In so doing, the Court is guided by that body of decisional law that has developed under Federal Rule of Civil Procedure 56.  Kamen, 791 F.2d at 1011; see also Hijazi v. Permanent Mission of Saudi Arabia to the United Nations, No. 09 Civ. 1268, 2010 WL 532510, at *1 (S.D.N.Y. Feb. 16, 2010).

**II.**

On April 28, 2000 the Russian Mission entered into a lease agreement with Ford with a heading reading "Ford Motor Company Executive Lease Car Program."  (Compl. ¶ 6; LeSueur Decl. Ex. B.)  In the lease, the Russian Mission agreed to "defend, indemnify and hold [Ford] harmless against any and all losses, liability, damage claims, demands, costs of every kind (except for loss of or damage to the leased vehicle), arising out of or connected with the use or operation" of the leased vehicle, except as covered by insurance provided by Ford.  (Compl. ¶ 7; LeSueur Decl. Ex. B at ¶ 10.)  Ford has provided a "Executive Lease Customer List" for 2000 to 2003, and the list includes

3

several organizations that appear to be private companies or organizations rather than governments.  (Block Letter Ex. A, dated Dec. 22, 2009.)

The lease limits use of vehicles under the program to the Russian Mission's "official business" by a "designated employee or principal of the Embassy or Mission and while conducting the business of the Embassy or Mission."  (LeSueur Decl. Ex. B at ¶ 12.)

On August 18, 2000, Svetlana Tikhonova ("Tikhonova") brought an action in New York state court to recover damages for injuries she sustained while a passenger in a leased vehicle that was being driven by a Russian Mission employee.  (Compl. ¶ 9.)  After the Russian Mission refused to defend the action, Ford and Tikhonova entered into a settlement agreement releasing Ford of all liability in exchange for a payment of $4,650,000.00 to Tikhonova.  (Compl. ¶¶ 10-11.)  The Russian Mission has refused to indemnify Ford.  (Compl. ¶¶ 14-15.)

On December 31, 2001, Ford ended its Diplomatic Lease program.  (LeSueur Decl. Ex. D.)

Ford brings this action against the Russian Mission for breach of contact and indemnification.  The defendants filed this motion to dismiss the complaint for lack of proper service and lack of subject matter jurisdiction under the FSIA, 28 U.S.C. §§ 1602, et seq.

4

At oral argument, the plaintiff argued that proper service had been made pursuant to 28 U.S.C. § 1608(a)(4).  However, the defendants indicated that they had not been served with a Russian translation of the documents as required by the statute.  In an order dated December 22, 2009 the Court denied without prejudice the motion to dismiss for lack of subject matter jurisdiction because of sovereign immunity and extended the plaintiff's time to effectuate proper service.  The plaintiff notified the Court that a letter directed to the Clerk of this Court from the United States Department of State confirmed that the Russian Ministry of Foreign Affairs had been properly served.  On January 5, 2010 this Court therefore vacated its prior order and reinstated the defendants' motion to dismiss on the ground of sovereign immunity.

**III.**

The only basis for subject matter jurisdiction in this Court over a foreign sovereign is the FSIA.  See Republic of Argentina v. Weltover, Inc., 504 U.S. 607, 610-11 (1992).  Under the FSIA, a foreign sovereign is immune from suit in the United States unless a statutory exception apples.  See 28 U.S.C. § 1604) ("a foreign state shall be immune from the jurisdiction of the courts of the United States and of the States except as

5

provided in sections 1605 to 1607 of this chapter."); Weltover, 504 U.S. at 610-11; see also Hijazi, 2010 WL 532510, at *3.  It is common ground between the parties in this case that the Russian Mission is a foreign sovereign and that the defendants are immune from suit unless an exception to the FSIA applies.

The complaint alleges subject matter jurisdiction pursuant to the FSIA exceptions for waiver, commercial activity, and tortious acts.  See 28 U.S.C. § 1605(a)(1)-(2) & (5).  However, the plaintiff's brief relies solely on the waiver and commercial activity exceptions.

Under the commercial activity exception, a foreign sovereign is not immune from suit in any case

> in which the action is based upon a commercial activity carried on in the United States by the foreign state; or upon an act performed in the United States in connection with a commercial activity of the foreign state elsewhere; or upon an act outside the territory of the United States in connection with a commercial activity of the foreign state elsewhere and that act causes a direct effect in the United States . . . .

28 U.S.C. § 1605(a)(2).  The FSIA defines a "commercial activity" as "either a regular course of commercial conduct or a particular commercial transaction or act.  The commercial character of an activity shall be determined by reference to the nature of the course of conduct or particular transaction or act, rather than by reference to its purpose."  28 U.S.C. § 1603(d).  The FSIA's legislative history indicates Congress's

6

intent that the FSIA give "courts . . . a great deal of latitude in determining what is a 'commercial activity' for purposes of [the FSIA]." Kato v. Ishihara, 360 F.3d 106, 110 (2d Cir. 2004) (alterations in original) (quoting H.R. Rep. No. 94-1487, at 16 (1976), as reprinted in 1976 U.S.C.C.A.N. 6604, 6615); see also Hijazi, 2010 WL 532510, at *3.  The same legislative history gives examples of what the Congress considered to be commercial, as opposed to governmental, activity.  See H.R. Rep. No. 94-1487, at 16 (stating commercial activities are "[a]ctivities such as a foreign government's sale of a service or a product, its leasing of property, its borrowing of money, its employment or engagement of laborers, clerical staff or public relations or marketing agents, or its investment in a security of an American corporation") (emphasis added).

Ford argues that the lease program is a commercial activity of the Russian Mission.  The FSIA specifies that a court must look to the nature of an activity rather than its purpose when determine whether an activity is commercial.  28 U.S.C. § 1603(d).  The Supreme Court has explained that the commercial activity exception applies when a sovereign "exercises only those powers that can also be exercised by private citizens, as distinct from those powers peculiar to sovereigns." Kato, 360 F.3d at 111 (internal quotation marks omitted) (quoting Saudi Arabia v. Nelson, 507 U.S. 349, 360 (1993)); see also Hijazi,

7

2010 WL 532510, at *4.  Plainly, leasing a motor vehicle is by nature a commercial activity that a private party can engage in. The legislative history of the FSIA indicates that "leasing of property" is considered a commercial activity.  H.R. Rep. No. 94-1487, at 16.

Moreover, the Executive Lease Program had private customers during the time period when the lease was signed and the accident took place, and therefore the lease agreement cannot be an exercise of purely sovereign powers.  The defendants argue that Ford's customer list is for an Executive Lease Program that continued throughout the 2000 to 2003 time period, but the Diplomatic Lease Program was terminated in 2001 and the Diplomatic Lease Program was aimed solely at sovereigns and diplomats.  Ford responds that the leases under both programs were the same and that there was nothing in the diplomatic leases that was not equally applicable to private parties.  The lease agreement in this case does refer to the "Executive Lease Car Program" in its heading.  More importantly, there is nothing in the lease agreement in this case that suggests that the lease could only be appropriate for a sovereign, or that suggests that the lease agreement is sovereign in nature.

The Court of Appeals for the Ninth Circuit found that the commercial activity exception applied and that a sovereign was not immune from a breach of contract claim when the Consulate

8

General of Nigeria rented a residence from a private landlord. See Joseph v. Office of the Consulate Gen. of Nigeria, 830 F.2d 1018, 1024 (9th Cir. 1987).  Nothing about the lease "distinguishes the transaction from an ordinary private commercial transaction, aside from the fact that the Consulate General of Nigeria was the tenant."  Id.  Likewise, nothing distinguishes the lease agreement between Ford and the Russian Mission from a private executive lease program except that the Russian Mission happens to be a sovereign.  See also Kern v. Oesterreichische Elektrizitaetswirtschaft AG, 178 F. Supp. 2d 367, 376-77 (S.D.N.Y. 2001) (finding lease transactions "indiputabl[y] . . . commercial in nature" although commercial activity exception did not apply when there was no causal relationship between transactions and alleged injury).  The defendants argue that the program was designed to provide vehicles only for official mission business, but the same provision could apply to a lease to provide vehicles to a corporation that are only to be used for official corporate business.  The rental of vehicles for official use does not require the exercise of any sovereign powers.

The defendants also rely on Castro v. Saudi Arabia, 510 F. Supp. 309, 312 (W.D. Tex. 1980), but that case is inapposite.  In Castro, the court found that the commercial activity exception did not apply to a contract between the United States

9

and Saudi Arabia for the training of military personnel. While ordinary purchases and contracts would typically qualify as commercial activity, military training and the provision of military equipment is a distinctly sovereign activity.

Because the lease agreement in this case is commercial in nature, the defendants are properly subject to suit in the United States under the FSIA commercial activity exception.[1]

## CONCLUSION

The defendants' motion to dismiss is **denied**. The Clerk is directed to close Docket No. 11.

**SO ORDERED.**

Dated:    New York, New York
             May 17, 2010

                                                   John G. Koeltl
                                       United States District Judge

---

[1] Having determined that the commercial activity exception applies, the Court need not address the plaintiff's argument that the defendants waived sovereign immunity pursuant to 28 U.S.C. § 1605(a)(1).